UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAKILA L. HARRIS,

    Plaintiff,

v.                                                               Case No. 8:24-cv-2992-AAS

FRANK BISIGNANO,
Commissioner of the Social
Security Administration,[1]

    Defendant.
_____/

**ORDER**

Takila L. Harris requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the memoranda submitted by the parties, the Commissioner's decision is **REMANDED**.

**I. PROCEDURAL HISTORY**

On September 22, 2021, Ms. Harris applied for DIB benefits, alleging a

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this suit.

disability onset date of April 16, 2012. (Tr. 205–11, 229). Ms. Harris's claim was denied initially and on reconsideration. (Tr. 69–80, 81–90). Ms. Harris requested a hearing before an ALJ, which was held on August 1, 2023. (Tr. 36–68, 110–12). On August 11, 2023, the ALJ found Ms. Harris not disabled and issued an unfavorable decision. (Tr. 14–25). Ms. Harris denied review of the ALJ's decision on October 23, 2024, making the decision the final decision of the Commissioner. (Tr. 1–6). Ms. Harris now requests review of the ALJ's final decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Ms. Harris was 43 years old on her date last insured of September 30, 2019. (Tr. 28, 232). Ms. Harris has a high school education and past relevant work experience as a medical assistant. (Tr. 28, 236). Ms. Harris alleges disability due to post-traumatic stress disorder, chronic back pain, chronic headaches, depression, and anxiety. (Tr. 70, 82).

### B. Summary of the Decision

The ALJ must follow five steps when evaluating a claim for disability.[2] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful

---

[2] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

activity,[3] she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC). *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

Here, the ALJ determined Ms. Harris had not engaged in substantial gainful activity during the period of her alleged onset date of April 16, 2012, through her date last insured of September 30, 2019. (Tr. 20). The ALJ found Ms. Harris had these severe impairments: degenerative disc disease of the

---

[3] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 404.1572.

cervical and lumbar spines, and headaches. (Tr. 21). However, the ALJ concluded Ms. Harris's impairments or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (Tr. 23).

The ALJ found Ms. Harris has the RFC to perform light work, as follows:[4]

> [L]ifting/carrying 20 pounds occasionally and ten pounds frequently, standing/walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. [Ms. Harris] also needed the option to use a cane to assist with walking. She could not climb ladders, ropes, and/or scaffolds. [Ms. Harris] could occasionally climb stairs and frequently climb ramps. She could occasionally stoop and crawl. [Ms. Harris] could frequently balance, kneel, and/or crouch. She would have needed to avoid concentrated exposure to extreme cold and loud noise, as well as avoid moderate exposure to hazardous industrial machinery and/or unprotected heights.

(*Id.*).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Ms. Harris could not perform her past relevant work. (Tr. 28). However, the VE testified that an individual with Ms. Harris's age, education, work experience, and RFC could perform other jobs that exist in

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

significant numbers in the national economy. (*Id.*). Specifically, Ms. Harris can perform the jobs of ticket seller, cashier II, and bench assembler. (Tr. 29). As a result, the ALJ concluded Ms. Harris was not disabled. (Tr. 30).

### III. ANALYSIS

#### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the

5

court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Ms. Harris raises two issues on appeal: (1) whether the ALJ properly evaluated Ms. Harris's headaches at step three of the sequential evaluation process; and (2) whether the ALJ erred in failing to identify and resolve a conflict with Ms. Harris's RFC determination and erred in determining she can perform the occupation of bench assembler.

#### 1. Evaluation of Ms. Harris's Headaches at Step Three.

Ms. Harris argues the ALJ erred in failing to adequately address her headaches at step three and the requirements of SSR 19-4p. (Doc. 17, pp. 4–8; Doc. 20, pp. 1–4). In response, the Commissioner acknowledges that the ALJ did not specifically reference the appropriate listing in his analysis but contends that this omission does not constitute reversible error. (Doc. 19, pp. 6–9). The Commissioner maintains that the ALJ adequately considered Ms. Harris's headaches at a later step and that his findings are supported by substantial evidence. (*Id.* at 9).

Although no listing applies directly to migraines or headache disorders,

the Social Security Rulings explain that an ALJ "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). SSR 19-4p instructs that an ALJ should evaluate headache disorders under listing 11.02. *Id.* Thus, under SSR 19-4p, "[a] migraine impairment can be functionally equivalent to Listing 11.02B if severe headaches or migraines occur 'at least once a week for three consecutive months despite adherence to prescribed treatment.'" *Rice v. Comm'r of Soc. Sec.*, No. 8:23-CV-02639-CEH-NHA, 2024 WL 4993583, at **5–6 (M.D. Fla. Nov. 20, 2024).

To analyze a claimant's headache disorder under the criteria of Listing 11.02B, the ALJ must consider

> (1) a medical source's description of Plaintiff's migraines, including their duration, intensity, and accompanying symptoms, (2) the frequency which with Plaintiff's migraines occurred, (3) whether Plaintiff adhered to his prescribed treatment, (4) whether Plaintiff suffered from any side effects of treatment, and (5) whether the migraines interfered with Plaintiff's with activity during the day.

*Rice*, 2024 WL 4993583, at *5 (summarizing SSR 19-4p, 2019 WL 4169635, at *7). Similarly, a migraine impairment may be functionally equivalent to Listing 11.02D if a claimant's migraines occur at least once every two weeks for at least three consecutive months despite treatment. *Id.* at *6. Thus, to analyze the medical equivalence of a claimant's migraines to listing 11.02D, the ALJ must consider the frequency of the migraines, the claimant's

7

adherence to any prescribed treatment, and "whether the migraines caused the plaintiff to have a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Rice*, 2024 WL 4993583, at *6 (quoting SSR 19-4p, 2019 WL 4169635, at *7). If a claimant's migraines or headache disorder does not medically equal a listing, the ALJ must, at a minimum, "assess the [claimant's RFC]" and "consider and discuss the limiting effects" of the headaches—such as pain and light sensitivity—when doing so. SSR 19-4p, 2019 WL 4169635, at *7.

Here, the ALJ references SSR 19-4p specifically when evaluating the record evidence about Ms. Harris's headaches. (Tr. 26). However, the ALJ did not evaluate Ms. Harris's headaches in accordance with SSR 19-4p. The ALJ failed to evaluate whether Ms. Harris's headaches medically equaled the criteria of Listing 11.02B or 11.02D. As a result, the court cannot conduct a meaningful review of the ALJ's subsequent findings, including the RFC determination. *See Martel v. Colvin*, No. 2:24-CV-254-JRK, 2025 WL 259344, at *4 (M.D. Fla. Jan. 22, 2025).

The ALJ states Ms. Harris suffers from the severe, medically determinable impairment of headaches. (Tr. 21). Along with the severe impairments of degenerative disc disease of the cervical and lumbar spine, her headache impairment "significantly limit[s] the ability to perform basic work

8

activities as required by SSR 85-28." (Tr. 21). But ultimately, the ALJ concludes that Ms. Harris "does not have an impairment or combination of impairments that meets or medically equals the severity of" a listing. (Tr. 23). The ALJ did not mention a listing for headaches. The ALJ then assessed Ms. Harris's RFC after "careful consideration of the entire record" and consideration of "all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 23).

When discussing Ms. Harris's headaches, the ALJ says that he "has not ignored the guidance in SSR 19-4p regarding the evaluation of primary headache disorder" and acknowledged Ms. Harris was medically prescribed a cane in May 2019, and ultimately assessed a needed "option to use a cane to assist with walking" in her RFC. (Tr. 23, 26, 27). The ALJ found that while Ms. Harris's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Ms. Harris's statements "concerning the intensity, persistence and limiting effects" of her symptoms were not entirely consistent with the evidence. (Tr. 24). However, the ALJ does not state whether he considered records or testimony about the frequency or severity of Ms. Harris's headaches when determining whether Ms. Harris suffers from a listing-level impairment or when determining Ms. Harris's RFC.

SSR 19-4p outlines the process for evaluating a headache disorder. No

9

single factor provided for in listing 11.02 is determinative; the evaluation process requires consideration of all requisite criteria. *See* SSR 19-4p, 2019 WL 4169635, at *7. To meet or medically equal a listing, Ms. Harris needed to show that she suffered a severe headache once a week for three months despite medical treatment. See SSR 19-4p, 2019 WL 4169635, at *7. Ms. Harris testified to experiencing migraines at least once a week, up to three times per week. (Tr. 49, 54). Her headaches can last a couple of hours and require her to sit in the dark to relieve them. (Tr. 50). She also has a history of a traumatic brain injury from two falls, one during her time in the military. (Tr. 849, 2765). Ms. Harris has a 50% service-connected rating from the VA for her migraines. (Tr. 2655). Ms. Harris further experiences floaters in her vision, sensitivity to light and sound, nausea, and tightness in the neck. (Tr. 50, 395-96, 603, 623, 849, 2865).

The ALJ's decision provides no discussion about Ms. Harris's headache frequency, duration, or severity in accord with SSR 19-4p. An ALJ must "consider all relevant evidence in the case and all of a claimant's medically determinable impairments, including those that are not severe when making [a residual functional capacity] determination." *Walbush v. Comm'r of Soc. Sec.*, No.: 8:23-cv-881-DNF, 2024 WL 3084337, at *4 (M.D. Fla. Jun. 21, 2024). The ALJ's blanket statement that he considered SSR 19-4p and found no equivalency is insufficient. *See Keeton*, 21 F.3d at 1066. The ALJ failed to

10

properly evaluate whether Ms. Harris's headache impairment met or medically equaled a listing. *See* SSR 19-4p, 2019 WL 4169635, at *7; *Martel*, 2025 WL 259344, at *4 ("[T]he balance of the ALJ's findings on the matter does not allow for meaningful review of the step three severity requirement or the ALJ's later RFC findings."). The ALJ's conclusory reasoning and failure to fully evaluate Ms. Harris's headache symptoms require remand of the decision. *See Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 834 (11th Cir. 2016) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.").

### 2. Remaining Issue

Ms. Harris alleges that the ALJ failed to adequately evaluate her RFC and the jobs that she can perform. The ALJ's reconsideration of Ms. Harris's headache disorder on remand may affect this remaining issue. For that reason, discussion of the issue is unnecessary. *See Demenech v. Sec. of the Dep't of Health and Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Soto v. Dudek*, No. 6:24-cv-87-JRK, 2025 WL 683683, at *1 (M.D. Fla. Mar. 4, 2025).

### IV. CONCLUSION

Accordingly, the Commissioner's decision is **REMANDED** under 42 U.S.C. § 405(g) for further proceedings. The Clerk is directed to enter judgment for Ms. Harris and to close the case.

**ORDERED** in Tampa, Florida, on January 5, 2026.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge